UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

TAMPA DIVISION

DEC 19 2025 PM 12:11
FILED - USDC - FLMD - TPA

DAEREGESCIA CHAMBERS,

Plaintiff,

v.

LINCARE INC.,

Defendant.

Case No.: 8:25-cv-3474-MSS-TGW

**COMPLAINT AND JURY TRIAL DEMAND**

Plaintiff, Daeregescia Chambers, brings this action pro se and states as follows:

**PARTIES**

1. Plaintiff Daeregescia Chambers ("Plaintiff") is an individual residing at:

18001 Richmond Place Dr

Tampa, FL 33647.

2. Plaintiff's email is d.chambers0001@yahoo.com, and phone number is 813-403-1730.

3. Defendant Lincare Inc. ("Defendant") is a corporation organized and existing under the laws of the

United States with a principal location at:

19387 US Highway 19 N

Clearwater, FL 33764.

**JURISDICTION AND VENUE**

IFP

1

4. This is an action for disability discrimination, retaliation, hostile work environment, interference with medical leave, and wrongful termination under:

• Americans with Disabilities Act (ADA), 42 U.S.C. §12101 et seq.

• Title VII of the Civil Rights Act, 42 U.S.C. §2000e et seq.

• Family and Medical Leave Act (FMLA), 29 U.S.C. §2601 et seq.

5. This Court has subject matter jurisdiction under 28 U.S.C. §1331 (federal question).

6. Venue is proper under 28 U.S.C. §1391(b) because the events giving rise to this action occurred in the Middle District of Florida, Tampa Division.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7. Plaintiff timely filed a charge of discrimination with the EEOC.

8. The EEOC issued a Right-to-Sue Letter, which Plaintiff received.

9. Plaintiff files this action within 90 days of receiving the Notice.

## FACTUAL ALLEGATIONS

10. Plaintiff began working for Lincare on January 13, 2025.

11. Plaintiff performed her job satisfactorily at all times relevant.

### Retaliation Begins After Refusing Overtime

12. Team Lead Sophia Shoaib acknowledged the plaintiff's exceptional work several times including January 28-29, 2025 for getting orders and having a great tone, scores and behavior.

13. On February 18, 2025 at 4:52pm, Team Lead Sophia asked Plaintiff to work overtime via recorded Microsoft Teams chat.

14. The plaintiff respectfully declined.

15. Sophia immediately stated she would issue Plaintiff a disciplinary point.

16. Plaintiff reasonably believed this was retaliation for declining overtime and asked if this was the cause.

17. Sophia changed her reasoning, claiming the point was for missed training time—despite both the training supervisor, Jason Thomas and call center supervisor, Philip Gumo confirming Plaintiff did not need to make up that time; Sophia was present for this conversation.

18. February 18, 2025 at 6:03 via Microsoft Teams chat, the plaintiff made a request to Supervisor Philip Gumo to be removed from Sophia's team as plaintiff did not feel safe being supervised by Sophia after this extreme infraction.

**Reduction of Sales Calls & Financial Harm**

19. Soon after Plaintiff reported Sophia's behavior, Plaintiff began experiencing:

• Abnormal, unexplained system malfunctions, and
• A dramatic drop in sales call volume, which directly reduced her pay.

20. During the monthly Microsoft Teams meeting, the plaintiff was told she would be placed back into the higher sales call queue the following month, March 2025.

21. When the next month arrived, on March 18, 2025 at 2:30 pm, Plaintiff was suddenly told the opposite by Philip: she would not be placed back in the queue.

22. Defendant knowingly allowed conditions that financially harmed Plaintiff after she reported misconduct.

**Repeated Requests for Help Ignored**

23. Plaintiff reported feeling unsafe and uncomfortable under Sophia's supervision and requested to be transferred multiple times on several dates including on or about February 18, 2025; March 5, 2025; March 18, 2025; March 24, 2025; April 15, 2025; May 15, 2025 via Outlook email, Microsoft Teams chat and Microsoft Teams meeting.

24. Supervisor Philip acknowledged the issues but failed to transfer Plaintiff.

25. When Plaintiff reported continued conflict and transfer request, Philip responded dismissively:

3

"Wow, you're still on about this?" and the defendant continuously ignored the plaintiff's repeated requests for help, protection, or reassignment.

26. Plaintiff requested direct contact information for Human Resources from Philip multiple times via Outlook email, Microsoft Teams chat and Microsoft Teams meeting, never being provided the information.

27. Plaintiff missed time due to the flu, provided a hospital note, and was told by Philip on March 5, 2025 at 3:30 pm via recorded Microsoft Teams meeting, with Inside Sales Representative, Lanecia Grier, the plaintiff would not receive a point because:

- She had verifiable illness
- Management had discretion
- He could hear on voicemail she was extremely sick

28. Upon her return, Philip reversed course on March 18, 2025 at 11:45 am in meeting with Sophia and issued the point anyway stating he has decided to issue the point because he can do what he wants at his discretion.

**Timesheet Hostility**

29. Plaintiff submitted a routine timesheet correction request on Sunday March 23, 2025 at the end of day.

30. Sophia responded aggressively, stating she had to come in on a Sunday and threatening punishment if the plaintiff sent additional requests.

31. On January 29, 2025 at 1:14 pm, prior to request to be removed from her team, Sophia praised the plaintiff's punctuality and thoroughness with getting timesheet corrections submitted.

32. Plaintiff saw and reported the hostility on March 24, 2025; at 4:31 pm Philip admitted such corrections were part of Sophia's job duties and her response was unacceptable yet still no update on having the Plaintiff removed from Sophia's team.

33. On March 24, 2025 at 4:21 pm the plaintiff advised Sophia that multiple requests had been placed to have the plaintiff removed from Sophia's team and if Sophia would request as well as this is likely to expedite the process.

34. Sophia advised the plaintiff that she will talk to Philip.

**System Issues & Unsupported Write-Ups**

35. Plaintiff experienced significant system issues which became overtly noticeable starting March 10, 2025, including no transfer button, which created extended holds.

36. On April 15, 2025 at 2:00 pm, the plaintiff had a monthly meeting with Philip in which stats showed plaintiff meeting and exceeding metrics and goals until after request to be removed from Sophia's team.

37. During this meeting, Philip advised that the plaintiff would be going into the blended queue for more sales opportunities.

38. The plaintiff inquired again on the status of being removed from Sophia's team during this meeting.

39. Philip asked if the plaintiff had ever been in a leadership or supervisor role prior to this position due to the plaintiff's direct communication style and display of strong leadership skills.

40. Plaintiff advised Philip no, it may likely be due to plaintiff being autistic.

41. Philip advised he understood.

42. Plaintiff asked for contact information to Human Resources but Philip, once again, would not provide any contact information.

43. On May 7, 2025 at 4:08 pm, Philip was helping troubleshoot system issues of no transfer button via Microsoft Teams chat but suddenly stopped responding and disappeared at 5:17 pm for an extended period.

44. From 5:17pm to 7:04 pm, the plaintiff received no responses from Philip after multiple attempts.

45. At 7:04, Philip responded to the plaintiff stating, "sorry, I was tied up".

46. On May 15, 2025 at 2:30 pm, during the monthly meeting, Philip advised that the plaintiff would not be going into the blended queue because the plaintiff did not meet metrics.

47. Philip also gave the plaintiff a write up during this meeting for leaving a customer on hold for an extensive amount of time and not transferring the customer.

48. The plaintiff advised Philip that the plaintiff did not have a transfer button which the plaintiff had advised numerous times to no avail.

49. During this monthly review, Philip checked the system records and confirmed:

- Plaintiff's system was malfunctioning
- Philip had stopped assisting mid-issue
- Plaintiff had no way to resolve the issue on her own

50. Despite confirming these facts, Defendant still allowed discipline to stand.

51. On May 22, 2025 at 2:04 pm, the plaintiff reported continued abnormal system issues.

52. On June 26, 2025 during monthly review, Philip advised the plaintiff of a final write up due to the plaintiff not meeting metrics.

53. Plaintiff, once again, requested contact information for Human Resources.

**Disability Diagnosis, Requests for Leave, and HR Obstruction**

54. On May 16, 2025, Philip denied the plaintiff's time off request for a mental health appointment.

55. In June 2025, Plaintiff was formally diagnosed with:

- Autism Spectrum Disorder
- ADHD

These are disabilities under the ADA.

56. On June 26, 2025 Plaintiff told Philip she was struggling emotionally and mentally after the diagnosis and requested:

- HR contact information
- Information about short-term disability,

- FMLA leave, and
- Possible accommodations

57. Philip provided Plaintiff with a non-working or unreachable HR phone number.

58. Plaintiff attempted to reach HR multiple times and never reached anyone.

59. Plaintiff had previously asked Philip for HR contact information on several occasions for both related and unrelated issues; Philip consistently withheld accurate contact info.

60. Defendant never engaged in the interactive process or discussed accommodations.

**Improper Termination Through HR Obstruction**

61. Plaintiff had pre-approved time off scheduled for July 2025.

62. While on leave, Plaintiff continued calling and attempting to contact HR regarding disability-related needs.

63. Plaintiff received a letter from Lincare stating that unless she contacted them by Thursday, July 24, 2025, her separation would be considered a voluntary resignation, backdated to June 30, 2025.

64. Plaintiff did not receive the letter until Friday, July 25, 2025, making compliance impossible.

65. Defendant then terminated Plaintiff's employment, falsely classifying it as a voluntary resignation.

66. Plaintiff was never provided accommodations, HR access, or fair investigation.

67. Defendant terminated Plaintiff while she was attempting to seek leave and accommodations and after requesting to be placed under more safe and less hostile leadership, constituting discrimination and retaliation.

**COUNT I – DISABILITY DISCRIMINATION (ADA)**

68. Plaintiff repeats and incorporates all previous paragraphs.

69. Plaintiff has disabilities (Autism and ADHD) as defined by the ADA.

70. Defendant knew of Plaintiff's disabilities.

71. The plaintiff was qualified for her position.

72. Defendant subjected Plaintiff to adverse actions including:

- Denial of accommodations
- Hostile treatment
- Reduced call assignments
- Invalid Write-ups
- Ignoring requests for HR support
- Allowing hostile supervision
- Allowing false discipline
- Terminating Plaintiff shortly after disability disclosure

73. Disability was a motivating factor in Defendant's actions

74. Defendant's conduct violated the ADA.

75. Defendant's actions violated 42 U.S.C. § 12112(a).

## COUNT II – HOSTILE WORK ENVIRONMENT

76. Plaintiff was subjected to repeated hostility from both Sophia and Philip.

77. Conduct included:

- Retaliatory point-giving and write ups
- Aggressive communication
- Dismissive, belittling responses
- Blocking HR access
- Creating emotional and psychological pressure
- Sabotaging work tools and opportunities

78. The harassment was severe, pervasive, and altered the conditions of employment.

79. Defendant is liable.

8

**COUNT III – RETALIATION (ADA & TITLE VII)**

80. Plaintiff engaged in protected activity by:

• Reporting mistreatment

• Requesting accommodations

• Opposing discriminatory and retaliatory actions

81. Defendant retaliated by:

• Issuing unfounded discipline

• Reducing sales opportunities

• Ignoring complaints

• Creating hostile conditions

• Terminating Plaintiff

**COUNT IV – FMLA INTERFERENCE**

82. Plaintiff attempted to exercise her rights under the FMLA.

83. Defendant interfered by:

• Providing false HR contact information

• Blocking Plaintiff from accessing leave forms

• Failing to provide notice of FMLA, Short-Term Disability and accommodation eligibility

• Failing to inform Plaintiff of her rights

**COUNT V – FMLA RETALIATION**

84. After Plaintiff attempted to explore FMLA leave, Defendant:

- Continued disciplinary actions
- Classified her upcoming leave as "resignation"
- Terminated her during a period she was seeking medical-related leave

85. This violates 29 U.S.C. § 2615(a)(2).

## COUNT VI – WRONGFUL TERMINATION

86. Defendant terminated Plaintiff based on:

- Disability
- Retaliation
- Hostile work environment
- Interference with protected leave
- Failure to investigate

87. Plaintiff suffered damages including lost pay, benefits, emotional distress, and reputational harm.

88. Backdating her separation date was malicious and unlawful.

## DEMAND FOR RELIEF

Plaintiff requests the following:

- Back pay and front pay
- Lost benefits
- Emotional distress damages
- Punitive damages
- Costs and fees
- Compensatory damages
- Pre-judgment and post-judgment interest
- Any additional relief the Court deems proper

**JURY DEMAND**

Plaintiff demands trial by jury on all issues so triable.

**SIGNATURE**

/s/ Daeregescia Chambers

Daeregescia Chambers

18001 Richmond Place Dr

Tampa, FL 33647

813-403-1730

d.chambers0001@yahoo.com

Date: 12/19/25